IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| LLOYD D. WHALEY, TODD L. WHALEY, BRIAN NOLTE, JEFF BOARDMAN, MISS SARAH, LLC, DYNAMIK FISHERIES, INC. and MY FISHERIES, INC., <br><br>        Plaintiffs,<br>    v.<br><br>PACIFIC SEAFOOD GROUP, DULCICH, INC., FRANK DULCICH, PACIFIC SEAFOOD GROUP ACQUISITION COMPANY, INC., PACIFIC SEAFOOD WASHINGTON ACQUISITION CO., INC., BANDON PACIFIC, INC., BIO-OREGON PROTEIN, INC., PACIFIC CHOICE SEAFOOD COMPANY, PACIFIC COAST SEAFOODS COMPANY, PACIFIC GARIBALDI, INC., PACIFIC GOLD SEAFOOD COMPANY, PACIFIC PRIDE SEA FOOD COMPANY, PACIFIC SEA FOOD CO., PACIFIC SURIMI CO., INC., PACIFIC TUNA COMPANY, LLC, WASHINGTON CRAB PRODUCERS, INC., PACIFIC ALASKA SHELLFISH, INC., SEA LEVEL SEAFOODS, LLC, ISLAND FISH CO., | Case No.:   1:10-cv-03057-PA<br><br><br><br>STIPULATION AND RESOLUTION AGREEMENT OF CLASS ACTION CLAIMS |

PAGE 1 –   STIPULATION AND RESOLUTION AGREEMENT OF
            CLASS ACTION CLAIMS

EXHIBIT A
PAGE 1 of 16

LLC, PACIFIC RESURRECTION BAY, PACIFIC CONQUEST, INC., CALAMARI, LLC, JO MARIE LLC, LESLIE LEE, LLC, MISS PACIFIC, LLC, PACIFIC FUTURE, LLC, PACIFIC GRUMPY J, LLC, PACIFIC HOOKER, LLC, PACIFIC HORIZON, LLC, PACIFIC KNIGHT, LLC, PRIVATEER LLC, SEA PRINCESS, LLC, TRIPLE STAR, LLC, PACIFIC FISHING, LLC, PACIFIC SEA FOOD OF ARIZONA, INC., STARFISH INVESTMENTS, INC., DULCICH SURIMI, LLC, BIO-OREGON PROPERTIES, LLC, PACIFIC GROUP TRANSPORT CO., PACIFIC MARKETING GROUP, INC., PACIFIC RUSSIA, INC., PACIFIC RUSSIA VENTURES, LLC, PACIFIC TUNA HOLDING COMPANY, INC., POWELL STREET MARKET LLC, PACIFIC FRESH SEA FOOD COMPANY, SEACLIFF SEAFOODS, INC., COPPER RIVER RESOURCE HOLDING CO., INC., PACIFIC COPPER RIVER ACQUISITION CO., INC., SEA LEVEL SEAFOODS ACQUISITION, INC., ISLAND COHO, LLC, S & S SEAFOOD CO., INC., PACIFIC SEAFOOD DISC, INC., DULCICH REALTY, LLC, DULCICH REALTY ACQUISITION, LLC, DULCICH JET, LLC and OCEAN GOLD SEAFOODS, INC.,

Defendants.

## I.  INTRODUCTION.

This Stipulation and Resolution Agreement of Class Action Claims is made by plaintiffs on behalf of themselves, individually, and all other persons similarly situated, and the defendants in this action pending in the U.S. District Court of Oregon, Medford Division, Case No. 1:10-cv-03057-PA ("Class Action" or "Action"), and subject to the approval of the Court.

PAGE 2 –   STIPULATION AND RESOLUTION AGREEMENT OF CLASS ACTION CLAIMS

II.  **CLASS CERTIFICATION.**

On January 31, 2012, this Court certified the following Class:

> Commercial fishing vessel owners and fishermen who delivered trawl-caught groundfish, whiting or pink shrimp to seafood processors on the West Coast from Ft. Bragg in northern California to the Canadian border, at any time between June 21, 2006 and December 31, 2011.

III.  **PROCEDURAL HISTORY.**

This case was started on June 21, 2010, by Lloyd Whaley and others seeking damages and injunctive relief for a class of fishermen and vessel owners who delivered trawl-caught groundfish, whiting and pink shrimp to West Coast processors between June 21, 2006 and December 31, 2011. The case was intensively litigated over 20 months including voluminous documentary and data discovery and a total of 60 depositions. Plaintiffs acknowledge that the extensive discovery revealed that some of what fueled the antitrust concerns in this case arose out of mistrust and a lack of understanding between fishermen and seafood processors. Plaintiffs also acknowledge that Pacific Seafood and Ocean Gold Seafoods have made substantial investments that contributed to the development of international markets for West Coast seafood products that benefit the industry. Defendants acknowledge there are a number of pro-competitive measures that will reduce fleet/processor conflict over ex-vessel prices, increase transparency, and improve the competitiveness of the West Coast fishing industry, and defendants will continue prior best practices.

In February and March, 2012, the parties engaged in lengthy negotiations coordinated and overseen by U.S. District Court Judge Michael R. Hogan acting as mediator. As a result of those negotiations, the Class Representatives have agreed to drop claims for damages against defendants in exchange for defendants' continued support of a comprehensive package of

provisions designed to assure the competitiveness and transparency of the onshore whiting, groundfish and pink shrimp markets on the West Coast.

Mediator and U.S. District Judge Michael R. Hogan commended the parties on their willingness to make huge compromises to reach the terms of this Agreement:

> This case could have gone on for years, including appeals. The fishermen and the processors, especially Pacific Seafood Group, are to be commended for taking a statesmanlike approach to resolving this complicated case. These parties focused on how to insure the West Coast fishing industry for the future. How can these markets be more transparent? How can we create conditions to make them more competitive?

The parties believe that this Agreement has the potential to continue to make the West Coast fishing industry one of the most competitive in the world for the mutual benefit of West Coast processors and West Coast fishing vessel owners and fishermen and that it is superior to continuation of the litigation through a July 2012 trial and appeals that could consume a number of years.

NOW, THEREFORE, IT IS HEREBY STIPULATED, by and among the plaintiffs on behalf of the class members on the one hand, and defendants on the other hand, and subject to the approval of the Court, that the Class Action is hereby being resolved pursuant to the terms and conditions set forth in this Agreement and upon the Effective Date (as defined below), the Class Action shall be dismissed with prejudice, subject to the recitals above which by this reference become an integral part of this Agreement and subject to the following terms and conditions:

1. **"Effective Date."** The Agreement will not become final until the Court has received it and determined that it is fair and reasonable (and appeals of that determination, if any, have been finally resolved).

"Pacific Seafood Group" or "Pacific Seafood" includes all 54 of the first named entities in this action.

2.  **Released Parties and Released Claims.**  As of the Effective Date, plaintiffs and all class members who do not request exclusion, release defendants and their past and present employees, officers, directors, shareholders, agents, principals, heirs, representatives, accountants, auditors, consultants, insurers and reinsurers, and their respective successors and predecessors in interest, subsidiaries, affiliates, parents and each of their respective past or present employees, officers, directors, shareholders, agents, principals, heirs, representatives, accountants, auditors, and consultants (the "Released Parties"), from the "Released Claims," which are defined as follows:

> Any and all claims for monopolization, attempted monopolization or conspiracy to restrain trade under Sections 1 and 2 of the Sherman Act that relate to the delivery of trawl-caught groundfish, whiting or pink shrimp to West Coast processors from Ft. Bragg, California north to the Canadian border between June 21, 2006 and December 31, 2011 and specifically including any claims for damages and/or injunctive relief related to those claims.

3.  **Pacific Seafood Group/Ocean Gold Seafoods, Inc. Contract.**

    (a)  The February 9, 2006 Agreement between Pacific Seafood Group and Ocean Gold Seafoods, will not be renewed in 2016.  In the event that the Pacific Seafood and Ocean Gold intend to enter into any new agreement that requires Pacific Seafood Group to act as the exclusive marketer of any seafood product produced by Ocean Gold Seafoods, Pacific Seafood and Ocean Gold shall first give 60 days' notice to class counsel and the Oregon Department of Justice and an opportunity to object to the agreement.  In the event of an objection to the new contractual arrangement, Judge Hogan shall determine whether the proposed new agreement is pro-competitive and if so, it may be approved.

(b)     Within 10 days of the Effective Date, the parties will amend the February 9, 2006 Agreement to eliminate those provisions in Section 3(b) and (c) of the Agreement that relate to the determination of the ex-vessel prices paid by Ocean Gold Seafoods to West Coast fishermen.

4.     **Processor-Owned Fishing Vessels.**

(a)     Employees of Pacific Seafood and Ocean Gold Seafoods will not serve as managers of fishermen's cooperatives in Washington, Oregon, or California.  No vessel owned by Pacific Seafood, Ocean Gold Seafoods, or their affiliates will be a member of a fishermen's/producers cooperative formed or operated pursuant to ORS chapters 62 or 65.  Vessels owned by Pacific Seafood and Ocean Gold Seafoods and their affiliates may participate in fishermen's cooperatives, associations, joint purchasing, and/or harvest and risk pools authorized or permitted by court order, statute, administrative rule, order, law, or other regulatory action.  Pacific Seafood and Ocean Gold Seafoods may each enter into agreements to purchase the output of fishermen's/producers cooperatives.  Pacific Seafood and Ocean Gold Seafoods may meet with fishermen's/producers cooperative members on an ongoing basis to discuss industry concerns, including harvesting, bycatch reduction, and scheduling.  Pacific Seafood or Ocean Gold Seafoods may petition Judge Hogan or his successor to modify or rescind this provision.  The petition may be based upon a showing that a modification is appropriate in light of changes in the law, administrative regulation, fisheries, or industry practices, or a showing that a modification would lead to a pro-competitive result.

(b)     With respect to pink shrimp, Pacific Seafood will allocate its fleet reasonably between and among its West Coast processing plants and will not concentrate the use of its fishing vessels at any one of its West Coast processing plants.  Pacific Seafood Group

further agrees that its own fishing vessels will be on a like-rotation and like-limits basis when compared to other similarly situated vessels that fish for shrimp and that are selling to Pacific Seafood on a regular basis at the port.

(c) For a term of 10 years from the Effective Date, no processor-owned fishing vessel will be sent out to fish for shrimp before that processor has reached agreement with fishermen on ex vessel prices in that port or other vessels have commenced fishing for shrimp.

5. **Enhanced Market Transparency.**

(a) Pacific Seafood Group and Ocean Gold Seafoods agree that all pink shrimp purchased and peeled will be purchased and paid for on a peel-count basis and that each processor's ice sampling procedure will be standardized at that processor's West Coast plants.

(b) Provided Bornstein Seafoods and Hallmark Fisheries who are not defendants in this action agree to do so, Pacific Seafood Group and Ocean Gold Seafoods agree to provide average wholesale prices on a monthly basis to Urner Barry for pink shrimp products.

6. **Ex Vessel Market Enhancements.**

(a) With the exception of situations where an individual fishing vessel enters into an agreement under which the fishing vessel is harvesting species allocated to quota owned by the processor or otherwise agreed between the parties, Pacific Seafood Group and Ocean Gold Seafoods agree that all groundfish and whiting processed by defendants' processing plants into finished seafood products shall be paid for at ex vessel prices negotiated with fishermen. Pacific Seafood Group and Ocean Gold Seafoods agree to continue their open door practice of allowing captains or vessel owners to observe the weighing and grading of their catches whenever and wherever reasonable under the circumstances.

(b)     For the 2013 fishing seasons, Pacific Seafood Group and Ocean Gold Seafoods agree to separately negotiate in good faith with harvesters for alternative pricing approaches for shrimp, onshore whiting and groundfish.

7.    **New Processor Entry Enhancement.**

(a)     Pacific Seafood Group agrees to sell its unused waterfront property in Crescent City, California at fair market value to any third party that will use that location for a seafood processing plant, unless Pacific Seafood has a reasonable business purpose to retain the property for existing or anticipated needs of its seafood business.

(b)     Pacific Seafood and Ocean Gold Seafoods agree to accept on commercially reasonable terms weighbacks and fish scrap or offal from new or existing seafood processors, provided the Pacific Seafood and/or Ocean Gold Seafoods' plants have the additional capacity to reasonably handle scrap from other processors.

8.    **Protection of Class Representatives.**  For a term of 10 years from the Effective Date, in the event the Class Representative's existing markets are not reasonably available, Pacific Seafood Group and Ocean Gold Seafoods agree to make pink shrimp, groundfish, onshore whiting and/or Dungeness crab markets available to vessels owned or operated by any Class Representative on the same basis as other similarly situated vessels, subject to the Class Representative providing 90-days advance notice. Where a Class Representative becomes a supplier to either defendant, neither Pacific Seafood Group nor Ocean Gold Seafoods may discriminate against the Class Representative on a basis of price or delivery opportunity when compared to the processor's other suppliers. For those fishing vessels in which class representative Lloyd Whaley owns an interest, all contact between the vessels and Pacific

Seafood and Ocean Gold Seafoods will involve only the vessels' captains, not Lloyd Whaley. Defendants will not have to deal directly with Lloyd Whaley.

9. **Term.** Except as noted in Sections 4(c) and 8 above, this Agreement shall have a term of five years from the Effective Date. Further, in the event conditions in the West Coast markets for trawl-caught groundfish, whiting and pink shrimp warrant, U.S. District Judge Michael R. Hogan shall have the discretion to extend the term of this Agreement for an additional five years.

10. **Dispute Resolution.** The parties to this Agreement stipulate that U.S. District Judge Michael R. Hogan shall have continuing jurisdiction over all aspects of this Agreement including the power to resolve any and all disputes through appropriate orders entering injunctive relief and/or awarding damages, legal fees and costs. In the event that Judge Hogan is not available to consider any particular dispute, his replacement shall be U.S. Magistrate Judge John Jelderks.

11. **Attorney Fees and Costs.** Plaintiffs' counsel will petition the Court for an award of attorneys' fees and costs.

12. **Notice of Class Action Resolution.** The parties agree that written notice to the class in the form attached as Exhibit A will be submitted to the Court for approval. The approved form of notice will be forwarded by First Class Mail to all owners of fishing vessels that delivered pink shrimp, onshore whiting or groundfish to West Coast seafood processors from Ft. Bragg, California to the Canadian border during the period of June 21, 2006 through December 31, 2011. The parties also agree to issue a joint press release providing notice of this Agreement that will be forwarded to each of the major metropolitan newspapers in San Francisco, Portland and Seattle, as well as to each of the newspapers in all coastal communities

from Ft. Bragg, California north to the Canadian border. Contemporaneous with the forwarding of the joint press release, plaintiffs' counsel will advance the costs of purchasing advertisements in each of the recipient newspapers providing a summary of the provisions of this Agreement and of the notice to class members in a form approved by the Court.

13. **Objections or Exclusions from the Class Action Agreement.**

(a) Objection/Exclusion Deadline: Each class member shall have 30 days from the initial mailing to request exclusion from the class or file an objection to this Agreement.

(b) Objections.

(1) The Notice shall advise class members that to object to the Agreement, they must file with the Court and serve all Parties' counsel a formal written statement objecting to the Agreement. The objecting class member must file and serve the objection by the Objection/Exclusion Deadline. The objection must provide the class members' full name and detailed reasons for objecting to the Agreement.

(2) No class member shall be entitled to be heard at the final Hearing (whether individually or through separate counsel) or to object to the Agreement, and no written objections or briefs submitted by any class member shall be received or considered by the Court at the Hearing, unless written notice of the class member's intention to appear at the Hearing, and copies of any written objections or briefs, shall have been filed with the Court and served on counsel for the Parties on or before the Objection/Exclusion Deadline.

(3) Class members who fail to file and timely serve written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by Appeal or otherwise) to the Agreement and shall be bound, to the extent allowed by law, by the terms of the Agreement.

PAGE 10 – STIPULATION AND RESOLUTION AGREEMENT OF CLASS ACTION CLAIMS

EXHIBIT A
PAGE 10 of 16

(c) <u>Requesting Exclusion</u>.

(1) The Notice shall advise that class members who wish to exclude themselves from the Class must submit a written statement requesting exclusion from the Class on or before the Objection/Exclusion Deadline. The written request for exclusion must contain the class member's name, current address, telephone number and Social Security number. The request for exclusion must be signed, dated and mailed to the Class Action Administrator postmarked on or before the Objection/Exclusion Deadline.

(2) The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. Any class member who requests to be excluded from the Class will not be bound by the Resolution Agreement or have any right to object, appeal or comment thereon.

(3) Class members who fail to submit a valid and timely request for exclusion on or before the Objection/Exclusion Deadline shall be bound, to the extent allowed by law, by all terms of the Resolution Agreement and any Judgment entered in this Class Action if the Resolution Agreement is approved by the Court, regardless of whether they have requested exclusion from the Class.

(d) <u>No Solicitation of Objections or Exclusions</u>. The Parties and their counsel agree to use their best efforts to carry out this Agreement. At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage any Party or class member to submit written objections to this Agreement or appeal from the Court's Judgment.

14. **Condition to Resolution Agreement.**

In the event that the owners of 20 or more commercial fishing vessels that did not deliver trawl-caught groundfish, whiting or pink shrimp to Pacific Seafood Group or Ocean

Gold Seafoods between June 21, 2006 and December 31, 2011 opt to request exclusion from the Class, defendants shall have the option to declare the Stipulation and Resolution Agreement null and void. In the event that defendants so elect, the case will be reinstated to the active docket for further litigation.

15. **Final Approval Hearing and Entry of Judgment.** Upon expiration of the Objection/Exclusion Deadline, with the Court's permission, a Hearing shall be conducted to determine final approval of the Resolution Agreement. Plaintiffs and defendants shall join in the motion for final approval of the Resolution Agreement detailed in this Agreement. Upon final approval by the Court at or after the Hearing, the Parties shall jointly present a Judgment and Order of Dismissal with prejudice to the Court for its approval and entry. After entry of the Judgment, the Court shall have continuing jurisdiction for purposes of addressing such post judgment matters as may be appropriate under court rules or as set forth in this Agreement.

16. **No Admission by Parties.** Whether or not this Agreement is finally approved, neither this Agreement, nor any document, statement, proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall in any event be:

(a) construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Released Parties, including, but not limited to, evidence of a presumption, concession, indication or admission by any of the Released Parties of any liability, fault, wrongdoing, omission, concession or damage; or

(b) disclosed, referred to or offered or received in evidence against any of the Released Parties, in any further proceeding in the Class Action, or any other civil, criminal or

administrative action or proceeding except for purposes of settling this Class Action pursuant to this Agreement, or for the purpose of enforcing the terms of this Agreement.

      (c)    construed to have any impact on any other relationship between Pacific Seafood and Ocean Gold Seafoods and no person bound by this Agreement will contend otherwise.

17. **Interim Stay of Proceedings.** The Parties agree to hold all proceedings in the Class Action, except such proceedings necessary to implement and complete the Agreement, in abeyance pending the Hearing to be conducted by the Court.

18. **Amendment or Modification.** Except as provided in Section 4(a), this Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

19. **Entire Agreement.** This Agreement and any attached exhibits constitute the entire agreement among these Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement or its exhibits other than the representations, warranties and covenants contained and memorialized in such documents.

20. **Authorization to Enter Into Agreement.** Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel shall cooperate with each other by using their best efforts to effect the implementation of this Agreement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement this Agreement, or on any supplemental provisions that may become necessary to

effectuate the terms of this Agreement, the Parties agree that U.S. District Judge Michael R. Hogan, or his replacement, shall have full authority to resolve such disagreement. The persons signing this Agreement on behalf of defendants represent and warrant that they are authorized to sign this Agreement on behalf of defendants.

21. **Binding on Successors and Assigns.** This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

22. **Counterparts.** This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

23. **This Agreement is Fair, Adequate and Reasonable.** The Parties believe this Agreement is a fair, adequate and reasonable resolution of this Class Action and have arrived at this resolution in arms-length negotiations, taking into account all relevant factors, and the input of mediator and resolution Judge Michael R. Hogan.

24. **Jurisdiction of the Court.** The Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the resolution embodied in this Agreement and all orders and judgments entered in connection therewith.

25. **Cooperation and Drafting.** Each of the Parties has cooperated in the drafting and preparation of this Agreement. Hence, in any construction made to this Agreement, the same shall not be construed against any of the parties.

26. **Confidential Discovery and Pleadings Filed Under Seal.** The Parties agree that

all discovery documents or data designated Confidential or Highly Confidential under the Stipulated Protective Order shall either be returned to the disclosing party or destroyed. The parties also agree not to file any motion to unseal any of the pleadings or documents that have been filed under seal in this Action.

27. **Parties' Waiver of Right to be Excluded and Object.** The Parties agree that by signing this Agreement they are bound to these terms. The Parties agree to not object to or appeal from this Agreement or the exhibits attached hereto. Plaintiffs further agree not to request to be excluded from the Class.

DATED this 2nd day of April, 2012.

| | |
|---|---|
| HAGLUND KELLEY JONES & WILDER, LLP | ESLER STEPHENS & BUCKLEY |
| By: /s/ Michael Haglund<br>Michael E. Haglund, OSB No. 772030<br>Attorneys for Plaintiffs | By: /s/ Michael J. Esler<br>Michael J. Esler, OSB No. 710560<br>Attorneys for<br>Pacific Seafood Group Defendants and<br>Frank Dulcich |
| | LARKINS VACURA LLP |
| | By: /s/ Christopher J. Kayser<br>Christopher J. Kayser, OSB No. 984244<br>Attorneys for Ocean Gold Seafoods, Inc. |

The undersigned agree to all of the terms of this Stipulation and Resolution Agreement of Class Action Claims:

/s/ Lloyd D. Whaley
Lloyd D. Whaley

/s/ Todd L. Whaley
Todd L. Whaley

/s/ Brian Nolte
Brian Nolte

/s/ Jeff Boardman
Jeff Boardman

**MISS SARAH, LLC**

By: /s/ Lloyd D. Whaley
    Lloyd D. Whaley, President

**DYNAMIK FISHERIES, INC.**

By: /s/ Lloyd D. Whaley
    Todd L. Whaley, President

**MY FISHERIES, INC.**

By: /s/ Jeff Boardman
    Jeff Boardman, President

**PACIFIC SEAFOOD GROUP**

By: /s/ Frank Dulcich
    Frank Dulcich, as President or
    Manager of each entity

/s/ Frank Dulcich
Frank Dulcich, Individually

**OCEAN GOLD SEAFOODS, INC.**

By: /s/ Dennis Rydman
    Dennis Rydman, President